IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


CHARLES K. JOHNSTON, JR.                                            PLAINTIFF

V.                          CASE NO. 5:17-cv-05158

LISA M. WILKINS, Hearing Judge,
Arkansas Parole Board; MARK
BERNTHAL, Supervisor, Probation and
Parole Office, Rogers, Arkansas; SHERIFF
VIC REGALADO, Tulsa County, Oklahoma;
and KINSEY RIVERS, Probation and
Parole Agent, Rogers, Arkansas                                      DEFENDANTS

## OPINION AND ORDER

This is a civil rights case filed by the Plaintiff, Charles K. Johnston, Jr., under the provisions of 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and has filed an application to proceed *in forma pauperis* ("IFP")(Doc. 6). He is currently incarcerated in the Benton County Detention Center ("BCDC"). The Prison Litigation Reform Act ("PLRA") modified the IFP statute, 28 U.S.C. § 1915, to require the Court to screen complaints for dismissal under § 1915(e)(2)(B). The Court must dismiss a complaint, or any portion of it, if it contains claims that: (a) are frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or, (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

## I. BACKGROUND

According to the allegations of the Complaint (Doc. 1), Plaintiff was on parole from the Arkansas Department of Correction. Plaintiff names as Defendants: Lisa M. Wilkins, a Parole Board hearing officer who ultimately revoked Plaintiff's parole; Mark Bernthal, the

-1-

probation and parole supervisor for the district which includes Benton County; the Tulsa County Sheriff, Vic Regalado; and Kinsey Rivers, his Arkansas parole agent.

In August of 2016, Plaintiff, who was then being supervised by the Conway, Arkansas, Probation and Parole Office, was charged with violating his parole by failing to pay fees in the amount of $245. At the parole violation hearing, Plaintiff alleges he was able to show proof of payment and his parole was reinstated.

Subsequently, Plaintiff absconded on his parole supervision. On December 19, 2016, in Tulsa, Oklahoma, Plaintiff turned himself in on the charge of absconding parole supervision. He was placed in the David L. Moss Detention Center (Tulsa detention center). On December 22, 2016, he appeared in court and was told the Arkansas Probation and Parole Office would be notified that day of his being held. Plaintiff alleges he signed extradition papers.

Plaintiff remained in the Tulsa detention center until he was released on April 30, 2017. Plaintiff does not indicate the basis on which he was released; however, he asserts that no Arkansas parole officials contacted him before his release "to direct me of my next steps." As a result of his lengthy incarceration in the Tulsa detention center, Plaintiff states he lost a $15 an hour job and became homeless.

On or around June 22, 2017, Plaintiff alleges the Olathe, Kansas, Police Department arrested him on the "same violation." Without having gone to court or signed any extradition papers, Plaintiff states he was sent back to Arkansas within 24 hours. Plaintiff maintains this extradition was illegal because he did not sign any extradition papers and was transported across state lines.

Plaintiff's parole revocation hearing was held on July 17, 2017. He alleges that

Judge Wilkins demanded to know why he did not contact his parole officers. Plaintiff states: "I wasn't told what to do. From PPO/officers, no one contacted me, to tell me what to do next . . . left out in the cold."

According to Plaintiff, at his parole revocation hearing, Kinsey Rivers testified that the Tulsa detention center had failed to notify the Arkansas parole officers of Plaintiff being held and ultimately released. Plaintiff alleges he also discovered at the parole hearing that he was still being charged the same late fees that the Conway parole agent had released him on.

Plaintiff alleges that he was held against his will in the Tulsa detention center; the Arkansas parole agents failed to extradite him in a timely manner; the Arkansas parole agents failed to comply with state and local laws for extradition; and double jeopardy applies to the alleged violation dealing with the fees owed. As relief, Plaintiff seeks compensatory and punitive damages.

## II. DISCUSSION

Under the PLRA, the Court is obligated to screen a case prior to service of process being issued. A claim is frivolous when it "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court bears in mind, however, that when "evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v.*

*Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Plaintiff's claims are subject to dismissal. First, Plaintiff's claims against Lisa Wilkins, a hearing officer with the Arkansas Parole Board, are subject to dismissal. The Arkansas Parole Board is a state agency created by the Arkansas General Assembly. *See* Ark. Code Ann. § 16-93-201. Its members are appointed by the governor and confirmed by the senate. *Id.* A claim against a hearing officer of the Arkansas Parole Board is the equivalent of a suit against a state agency, and Eleventh Amendment immunity precludes this claim. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Furthermore, the hearing examiner performs essentially judicial functions and is entitled to absolute immunity. *See, e.g., Anton v. Getty*, 78 F.3d 393 (8th Cir. 1996).

Second, Plaintiff's claims against Mark Bernthal and Kinsey Rivers are subject to dismissal. The complaint contains no allegations that either of these Defendants were notified of the fact that Plaintiff was detained in the Tulsa detention center. In fact, Plaintiff alleges Kinsey Rivers testified that Arkansas was not notified of this fact. There are no facts alleged which establish a plausible cause of action against these Defendants for unlawful or wrongful detention.

Third, Plaintiff's claim against Sheriff Regalado cannot be litigated in this forum. This Court lacks personal jurisdiction over him. When an IFP applicant files a complaint that does not include any allegations supporting personal jurisdiction over a named defendant the case may properly be dismissed against that defendant, *sua sponte*. *Sanders v. United States*, 760 F.2d 869, 871–72 (8th Cir.1985) (per curiam).

When the jurisdiction of the Court is based on a federal statute or federal question,

and not diversity of citizenship, a prima facie case for personal jurisdiction requires two elements. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). First, jurisdiction may be exercised only when haling the defendant into court satisfies the Due Process Clause. *Id.* Second, the defendant must be amenable to service of process. *Id.*

Section 1983 does not provide for nationwide service of process. *See, e.g., Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). We therefore look to the "long-arm statute of the forum state.'" *Romak USA, Inc., v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). "Arkansas' long-arm statute extends jurisdiction over nonresidents to the maximum extent permitted by the Due Process Clause." *Epps v. Stewart Information Services, Corp.*, 327 F.3d 642, 647 (8th Cir. 2003); see Ark. Code Ann. § 16-4-101. Thus, the single question is whether the exercise of personal jurisdiction is consistent with the Due Process Clause. *See Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996); *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 921 (8th Cir. 1995).

"Due process requires sufficient 'minimum contacts' between the defendant and the forum state so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Epps*, 327 F.3d at 647 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Defendant's contacts must be more than

'random, fortuitous, or attenuated.'" *Epps*, 327 F.3d at 648 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297.

"Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable time immediately prior to the filing of the lawsuit." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) (citation omitted). The Eighth Circuit has set forth five criteria to be considered in determining whether a defendant has minimum contacts with the forum state. *Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983)). These factors are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and, (5) the convenience of the parties. *Id.* The first three of these factors are of "primary importance" in determining "the sufficiency of defendant's contacts." *Id.* See also *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073-74 (8th Cir. 2004) (reiterating same five factors and instructing courts to consider them).

There are no allegations that Sheriff Regalado had any contacts with the State of Arkansas other than the fact that Plaintiff turned himself in there based on an Arkansas parole violation warrant. Sheriff Regalado cannot be said to the have purposefully established minimum contacts with Arkansas. This is clearly insufficient to satisfy the

requirements of the Due Process Clause.

## III. CONCLUSION

The claims against Lisa Wilkins, Mark Bernthal, and Kinsey Rivers are subject to dismissal for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B). In addition, Wilkins is immune from suit, and the Court lacks personal jurisdiction against Sheriff Regalado. Therefore, the complaint is **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED** on this 29th day of August, 2017.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE